HARPER v. RANKIN.

(Circuit Court of Appeals, Fourth Circuit. November 9, 1905.)

No. 584.

1. JUDGMENT—MATTERS CONCLUDED—NATURE OF BANKRUPT'S INDEBTEDNESS.

A judgment of a court of competent jurisdiction in favor of the receiver of a national bank and against a defendant who was duly served, based upon findings that such defendant, while an officer of the bank, embezzled and misappropriated its funds, where unreversed, is conclusive of the character of the indebtedness upon an issue as to whether the debt is one from which such defendant would be released by a discharge in bankruptcy.

2. BANKRUPTCY—DISCHARGE—DEBTS CREATED BY FRAUD OR EMBEZZLEMENT.

An indebtedness created by the embezzlement and misappropriation of the funds of a bank by the debtor while acting in the capacity of vice president of the bank and having full control of its affairs is one created by his fraud, embezzlement, and misappropriation while acting in a fiduciary capacity, within the meaning of Bankr. Act July 1, 1898, c. 541, § 17a (4), 30 Stat. 550 [U. S. Comp. St. 1901, p. 3428], and from which he is not released by a discharge in bankruptcy.

Petition for Revision of Proceedings of the District Court of the United States for the Western District of Virginia, at Abingdon, in Bankruptcy.

For opinion below, see 133 Fed. 970.

R. A. Ayers, for petitioner.
W. C. Herron, for respondent.

Before GOFF and PRITCHARD, Circuit Judges, and BOYD, District Judge.

BOYD, District Judge. On the 18th day of May, 1904, Edward L. Harper was, upon his own petition, adjudged bankrupt by the District Court of the United States for the Western District of Virginia sitting in bankruptcy. At the time of the said adjudication there was pending, in the Circuit Court of the United States for the Southern District of New York, an action brought against the said Harper by George C. Rankin, receiver of the Fidelity National Bank of Cincinnati, to recover the sum of $2,500,000. On the 18th of October, 1904, Harper, the bankrupt, filed his petition in the District Court for the

Western District of Virginia, praying that Rankin, receiver as afore-said, to be enjoined from further proceeding in his action, under the provisions of section 11 of the bankruptcy act of July 1, 1898, 30 Stat. 549, c. 541 [U. S. Comp. St. 1901, p. 3426]; and on the same day the court made and entered the order contemplated by the said section. On the 21st of November Rankin, the receiver, filed his petition in the case, alleging that the claim upon which his suit was pending was not one from which a discharge in bankruptcy would release the bankrupt; it being alleged by Rankin that the debt upon which he was suing was one of those excepted by section 17 of the bankruptcy act. 30 Stat. 550 [U. S. Comp. St. 1901, p. 3428]. Accompanying Rankin's petition as an exhibit was a certified copy of a bill of complaint, in chancery, filed in the Circuit Court of the United States for the Southern District of Ohio on the 19th of September, 1887, in the name of David Armstrong, receiver of the Fidelity Na-tional Bank. of Cincinnati, Ohio, against Briggs Smith, Edward L. Harper, William H. Chatfield, Henry Pogue, Albert B. Gahr, James H. Mathews, Eugene Zimmerman, Ammi Baldwin, and Benjamin E Hopkins; also the findings of fact and entry made against the said Edward L. Harper in the said case at October term, 1903, of the said Circuit Court for the Southern District of Ohio. Harper demurred to the petition of Rankin, and on the 20th of December, 1904, the court of bankruptcy overruled the demurrer, and upon consideration of Rankin's petition and the exhibits therewith filed entered an order annulling and setting aside the restraining order of October 18, 1904. The case is certified, upon the exception of the bankrupt, to this court for a review of the decision of the bankruptcy court.

In the bill filed by Armstrong, receiver, in the Circuit Court for the Southern District of Ohio, it is charged, among other things, in substance, that Briggs Swift was president of the Fidelity National Bank, of Cincinnati, Ohio, and that Edward L. Harper was vice presi-dent, Ammi Baldwin, cashier, and Benjamin E. Hopkins, assistant cashier, and that the other defendants in the case were directors of the said bank. It is also charged that Harper had the active man-agement and control of the affairs of the said bank, and that he was permitted by the directors of the bank to loan its money to himself and to a firm of which he was a member, and to various corporations named in the bill, of which he was principal owner; that, in the course of these transactions Harper, as vice president, misappropriated the funds of the bank, violated the law in respect to the affairs of the bank, and in substance it is charged that he fraudulently diverted, appropriated to his own use, and embezzled the bank's money to the extent of $2,500,-000, and thus became indebted to it in that sum.

The findings of fact and judgment entered in the case at October term, 1903, are as follows:

"The United States of America, Southern District of Ohio, Western Divi-sion—ss.:

"At a stated term of the Circuit Court of the United States of America with-in and for the Western Division of the Southern District of Ohio, in the Sixth Judicial Circuit of the United States of America, begun and had in the court-rooms at the city of Cincinnati, Ohio, in said district, on the first Tuesday of

October, being also the 6th day of that month, in the year of our Lord 1903, and of the American Independence the one hundred and twenty-eighth.

"Present: The Honorable Albert C. Thompson, District Judge, sitting and holding Circuit Court:

"On Saturday, the 10th day of October, A. D., 1903, among other proceedings had, were the following, to wit:

"George C. Rankin, Receiver of the Fidelity National Bank of Cincinnati, v. Edward L. Harper, Impleaded with Briggs, Swift, and Others. No. 4,054.

"This cause came on for hearing at the October term of 1903 of this court, and the court thereupon find as follows: That since the bringing of this suit David Armstrong, receiver of the Fidelity National Bank, and the original plaintiff in this case, has resigned, and that George C. Rankin has been appointed such receiver by the Comptroller of the Currency, and is now acting as such, and has been made plaintiff in this case by order of this court; that said Edward L. Harper has been personally served with process in this case, and has filed no answer to the allegations of the bill of complaint, and is in default, and has been notified, as ordered by the court, of the setting of this cause. And on consideration thereof the court find that the defendant, Edward L. Harper, was vice president, and in general charge of the affairs of the said Fidelity National Bank from its organization until its failure, and that during said time he embezzled large sums of money of the funds of said bank; that he loaned large sums of money to firms and corporations in which he was interested, without authority and contrary to law, and that the proceeds of said loans were taken by him from said bank for his personal use, and that the said firm and corporation became insolvent, and the sums so loaned were entirely lost to the bank; that he used the funds of said bank in large amounts in personal speculations, and which sums were wholly lost to the bank; that the allegations contained in the bill of complaint in reference to said several matters are true as therein set forth. By reasons of which illegal acts of the said Harper the said bank was damaged in more than the sum of $2,500,000, for which sum said Harper is liable to the bank. It is therefore ordered, adjudged, and decreed by this court that the said plaintiff recover for the use of said bank of the said defendant, Edward L. Harper, the sum of $2,500,000, with interest from June 20, 1887, the date of the failure of said bank, together with the costs of suit to be taxed, and that execution issue therefor."

The cause of action in the case of Rankin, Receiver, etc., v. Edward L. Harper, in the Circuit Court of the United States for the Southern District of New York, in which the injunction is sought, is the above judgment. The grounds of Harper's demurrer to Rankin's petition are these:

"(1) On the face of the petition it appears that the judgment enjoined was not for a debt created by respondent's fraud, embezzlement, misappropriation, or defalcation while acting as an officer, or in any fiduciary capacity, and the petition does not allege any other ground for bringing the debt within any of the exceptions set out in section 17 of the national bankruptcy act.    (2) The bill filed with the petition, as part thereof, shows on its face that a considerable portion of the judgment sought to be enforced by petitioner was not founded on liabilities arising out of fraud, embezzlement, misappropriation, or defalcation; and, since the petition does not show what part of said judgment is so founded, the petition must be dismissed.    (3) The said petition is otherwise defective, inconsistent, and insufficient."

The single question involved in this case is whether a discharge in bankruptcy would operate as a release of the debt due from Harper, for the recovery of which the suit in the Circuit Court for the Southern District of New York was brought and is pending. In order to present the question fully, we copy so much of the two sections of the bankruptcy act as relates to the controversy in this case:

"Section 11. A suit which is founded upon a claim from which a discharge would be a release, and which is pending against a person at the time of the filing of a petition against him, shall be stayed until after an adjudication or the dismissal of the petition; if such person is adjudged a bankrupt, such action may be further stayed until twelve months after the date of such adjudication, or, if within that time such person applies for a discharge, then, until the question of such discharge is determined.

"Sec. 17. A discharge in bankruptcy shall release a bankrupt from all of his provable debts, except such as * * * (4) were created by his fraud, embezzlement, misappropriation, or defalcation while acting as an officer or in any fiduciary capacity."

The Supreme Court of the United States, in Crawford v. Burke, 195 U. S. 176, 25 Sup. Ct. 9, 49 L. Ed. 147, has construed the last clause of section 17 of the bankruptcy act of 1898 to mean that, in order to bring a debt within the exception, it must be created by the bankrupt's fraud, embezzlement, misappropriation, or defalcation while acting as an officer or in any fiduciary capacity. This decision divests the present case of all considerations save these: First, was the debt claimed by Rankin as receiver, upon which his suit is founded, created by Harper's fraud, embezzlement, misappropriation, or defalcation? and, second, if the debt was thus created, was Harper, at the time, acting as an officer or in any fiduciary capacity?

By his demurrer the bankrupt confesses the facts as stated in Rankin's petition to be true, but insists that the debt claimed by Rankin, upon these facts, does not come within the exception provided in section 17 of the bankruptcy act. The bill of complaint in the case of Rankin, Receiver, v. Harper and Others, and the findings of fact and judgment of the Circuit Court for the Southern District of Ohio, attached as an exhibit to the petition, constitute a part of its allegations, and in this exhibit the bill charges that Harper, as vice president of the Fidelity National Bank of Cincinnati, Ohio, had control and management of its affairs, that in this position, by his fraud, he destroyed the assets of the bank, that he embezzled its funds, and that he misappropriated the same by making loans to copartnerships and corporations in which he was interested, and which were totally insolvent, which loans were wholly lost to the bank; and the court, in its judgment, declares and finds as facts that the defendant, Edward L. Harper, was vice president and in general charge of the affairs of the Fidelity National Bank from its organization until its failure; that during the time he embezzled large sums of money of the funds of the bank; that he loaned large sums of its money to firms and corporations in which he was interested, without authority and contrary to law, and that the proceeds of said loans were taken by him from the bank for his personal use; that said firms and corporations became insolvent, and the sums so loaned were entirely lost to the bank; that he used the funds of the bank, in large amounts, in personal speculation, which were wholly lost to the bank; and that by reason of these unlawful acts he became liable to the bank in the sum of $2,500,000. And judgment was entered against him for the said sum, with interest on it from July 20, 1887, and costs.

If the allegations in the bill of complaint and the findings of fact by the court are true, it seems to us that the character of the debt in

controversy is fully established. The question then presents itself whether we have the power to go behind this judgment and the recitations of fact therein to inquire further as to the cause of action upon which the suit was brought, or the evidence upon which the court based its findings and conclusions. The case of Rankin, Receiver, v. Harper and Others, was pending in a court of competent jurisdiction. Harper was duly served with process, and had his day in court. The judgment was regularly entered against him, and he took no proceeding to annul or to modify it. "Where a court has jurisdiction, it has the right to decide any question which occurs in the cause, and, whether its decisions be correct or otherwise, its judgments, until reversed, are regarded as binding in every other court" (Elliott v. Peirsol, 26 U. S. 329, 7 L. Ed. 164); and the same doctrine is upheld in McGoon v. Scales, 76 U. S. 23, 19 L. Ed. 545. "The question of the conclusiveness of records most frequently arises on judgments. The doctrine is well established that a cause of action once finally determined, without appeal or some proceeding for the annulment of the judgment between the parties, on its merits by any competent tribunal, cannot afterwards be litigated by a new proceeding, either before the same or any other tribunal." A. & E. Ency. vol. 2, p. 390, and authorities cited in note. "It is a rule of common law that the record of a court imports such absolute verity that, as a general rule, no person against whom it is producible is allowed, in collateral proceedings, to aver or prove as error in fact a matter contrary thereto." A. & E. Ency. vol. 2, p. 389. "Judgments of a court in a case properly constituted before it, and where it has jurisdiction of the parties and the subject-matter of the controversy, are deemed to be valid, and will be upheld until impeached by a direct proceeding for that purpose." Morris v. Gentry, 89 N. C. 248. The bill of complaint charged fraud, misappropriation, and embezzlement on the part of Harper. The court so found, and entered a judgment as above stated. For the purposes of the present proceeding, we are of the opinion that the judgment of the Circuit Court for the Southern District of Ohio is conclusive; and, if this position is correct, then the debt upon which the receiver's suit is pending, in its creation, contained all three of the elements of fraud, embezzlement, and misappropriation.

The rights and powers of a vice president of a bank, having the management and control of its affairs, are such as he is bound to exercise for the benefit of others. His relation to the funds of the bank is that of a fiduciary, and an indebtedness arising from the embezzlement or misappropriation of such funds by him is incurred in that capacity. This being our conclusion, we hold that the debt upon which Rankin, as receiver, is suing in the Southern District of New York, is one which comes within the exception provided in section 17 of the bankruptcy act, and that therefore the bankrupt was not entitled to the restraint provided in section 11 of the said act. The question was discussed in the bankruptcy court, and also here, as to whether or not Harper was an officer, as contemplated by section 17 of the act of 1898. The argument in support of the position that he was is based largely upon the fact that in the provision of the act of 1867,

relating to the same subject, the term "public officer" is used, whilst in section 17 of the present law the word "public" is left out. In the case of Crawford v. Burke, supra, in which a construction of section 17 of the present bankruptcy act was under consideration, in passing upon the difference between the terms of that section and the section pertaining to the same subject in the act of 1867, the court says: "Our own view, however, is that a change in phraseology creates a presumption of change in intent." But this language of the court had reference to the circumstances under which the debt was created, and not to the official or fiducial character of the debtor. The judge of the bankruptcy court was of the opinion that this change in phraseology by the substitution of the word "officer" for the term "public officer" had the effect to enlarge the scope of the law, so as not only to include within its meaning public officers, but also officers of private corporations; and he supports his decision by forceful argument. However, in order to dispose of this case, we do not deem it necessary to pass upon this point, it being our opinion, upon the facts, that the debt involved was by the fraud, embezzlement, and misappropriation of the funds of the bank by Harper, and that he was, at the time, acting in a fiduciary capacity.

The judgment of the bankruptcy court is affirmed.