The complainant is foreclosing a mortgage and the defendants claim priority of their judgments over the mortgage. The facts as gathered from briefs of counsel, in chronological order, are as follows:
On January 19th, 1927, Oriental Holding Company made a $3,500 mortgage to complainant on premises 125 Wainwright street, Newark, New Jersey, then encumbered by a first mortgage originally $7,000, held by Halcyon Building and Loan Association.
On January 17th, 1929, Barnet Burstein and the Model Plan Finance Corporation, holding four judgments totaling $1,506.05, besides costs, recovered against Arthur G. Stockheimer, *Page 601 
filed their bill in this court against him and Margaret Stockheimer and Oriental Holding Company to set aside conveyances alleged to be fraudulent, and to have declared that Arthur Stockheimer was and is the true owner of the Wainwright street premises. Subpoenas were issued in this action.
On January 17th, 1929, this court made an order in said suit, enjoining the defendants therein from alienating or transfering the property.
On January 18th, 1929, a notice of lis pendens against the Wainwright street property was duly filed, setting forth the then pending chancery action of Burstein against Stockheimer and Oriental Holding Company.
On March 18th, 1929, this court, at the request of Wallace M. Norton, solicitor of the Stockheimers and Oriental Holding Company, made an order modifying the restraint of January 17th, 1929, by permitting them to execute to Halcyon Building and Loan Association a new $8,500 mortgage on the Wainwright street property "and to pay out of the money so raised from said building and loan association $3,500 to one Samuel Schechner, a second mortgagee of said premises, for cancellation of his mortgage, and the balance for cancellation of the present first mortgage, and other charges in connection with said property and fees in obtaining said mortgage."
On April 25th, 1929, Oriental Holding Company executed an $8,500 mortgage to Halcyon Building and Loan Association, complainant's $3,500 second mortgage was canceled, and Oriental Holding Company executed a $950 mortgage to complainant, which complainant now seeks to foreclose.
On May 20th, 1930, a final decree was entered in the action of Burstein and the Model Plan Finance Corporation against the Stockheimers and Oriental Holding Company, in favor of the complainants therein, declaring the conveyances to be fraudulent and set aside and that Arthur G. Stockheimer is the true owner of the Wainwright street premises. The judgments of Burstein and the Model Plan Finance Corporation attached as liens against that property. *Page 602 
On June 24th, 1930, Vice-Chancellor Berry held the president of Oriental Holding Company guilty of contempt in executing the $950 mortgage herein sought to be foreclosed, for violation of the restraining order of January 17th, 1929.
On July 8th, 1930, this complainant petitioned this court, in the fraudulent conveyance action (setting up the same facts as alleged in the bill of complaint herein), for reopening of the final decree, and that his $950 mortgage be declared prior to the judgments held by Burstein and the Model Plan Finance Corporation. A show-cause order was made.
On July 29th, 1930, the petition, after hearing, was denied.
On August 18th, 1930, complainant filed his bill herein.
The complainant had constructive notice of the chancery suit when he took the mortgage for $950, which was furnished by the filing of the lis pendens. He also, in my opinion, had actual notice. His testimony in regard to this transaction is very contradictory and involved, and it is unnecessary for me to analyze it in detail, but having considered it I am convinced that he had actual as well as constructive notice. Moreover, the mortgage was executed in violation of an order of this court as will be seen from the facts stated above. The lien of the defendants' judgments attached prior to complainant's mortgage on January 18th, 1929, when the fraudulent conveyance bill and lispendens were filed. Bradley v. United Wireless Telegraph Co.,79 N.J. Eq. 458; affirmed, 83 N.J. Eq. 688, in which the court says:
"It is also well settled that the filing of a judgment creditor's bill for the purpose of setting aside a fraudulent conveyance, and thereby subjecting the property to the payment of the judgment of the creditor, and the service of process thereunder, creates a lien in equity upon the equitable estate of the debtor, in the property so conveyed, * * *."
Complainant, in my opinion, is not entitled to a subrogation. He canceled the $3,500 mortgage and accepted the $950 mortgage with actual and constructive knowledge of the facts. In Garwood
v. Ad'mrs. of Eldridge, 2 N.J. Eq. 145 (at p. 150), the court said: *Page 603 
"The first ground upon which this relief is asked is, that the complainant canceled these mortgages unwittingly, and without a knowledge of the legal effect of that act. It is not from any mistake or want of knowledge of facts, but of the law; for as to the existence of the judgment, he had, or might have had full knowledge, by using the ordinary and proper precaution of examining the public records. `Ignorantia legis neminemexcusat' is the general rule, as well in equity as in law. This rule is not without its exceptions, and it would seem those exceptions are not by any means well settled. The American cases have been strenuous in supporting the general rule, from the great danger of opening a door for so common a pretense. It has been decided that a court of equity could not relieve an obligee when he released one joint obligor, supposing the other to be bound. In the case of Lyon v. Richmond et al., 2 John. Ch.51, the chancellor says: `The courts do not undertake to relieve parties from their acts and deeds fairly done on a full knowledge of facts, though under a mistake of the law. Every man is to be charged at his peril with a knowledge of the law. There is no other principle which is safe and practicable in the common intercourse of mankind.' The same principle is afterwards recognized in the case of Storrs v. Barker, 6 John. Ch. 170."
And, again, in Gaskill v. Wales, 36 N.J. Eq. 527, the court said:
"The principle of subrogation is one of equity merely, and it will accordingly be applied only in the exercise of an equitable discretion, and always with a due regard to the legal and equitable rights of others."
This complainant not only is not entitled to subrogation, but, moreover, the defendants would be injured thereby. Complainant does not come into court with clean hands. He knew of the restraint and he deliberately violated it. He, therefore, is entitled to no relief from this court, especially in a matter which appeals to its discretion.
I shall, therefore, find that defendants' lien is entitled to priority over complainant's mortgage and that he is not entitled to subrogation. *Page 604