## MANUFACTURERS TRADING CORPORATION v. ROBERTS.

### In re BANNING MILLS.

### No. 10728.

Circuit Court of Appeals, Fifth Circuit.

Dec. 1, 1943.

Alfred H. Sachs, of Cleveland, Ohio, and Sidney I. Rose, of Atlanta, Ga., for appellant.

R. O. Jones, of Newnan, Ga., and Shirley C. Boykin, of Carrollton, Ga., for appellee.

Before SIBLEY, HOLMES, and WALLER, Circuit Judges.

PER CURIAM.

Under the financing arrangement between appellant and Banning Mills, the latter assigned its accounts to appellant for seventy-five per cent of the face value of the accounts to be paid at the time of the assignment. The remaining twenty-five per cent, "less the charge covering the cost and expense of credit investigation and credit and fidelity insurance, auditing, accounting, interest, clerical help, bookkeeping, exchange, postage, etc., which charges and Assignee's total compensation shall be 1/20 of one per cent of the face value of the accounts for each day commencing on the date of assignment and continuing until the date when the full amounts due and all moneys paid out by the Assignee on said accounts shall have been received by the Assignee from the purchasers or from the Assignor and/or their representatives, successors or assigns", and less customers' discounts and deductions, belonged to the Assignor. The Assignor had the duty to collect the accounts and to remit the proceeds to appellant, whereupon the deductions were then made and the residue of the twenty-five per cent was transmitted to Assignor.

In form, the assignments were sales of the accounts, but it is conceded that the assignments were, in law, security for money loaned.

The borrower was adjudged a bankrupt at a time when some $23,000 of the money advanced by the lender to the borrower remained unpaid. Subsequently the principal sum advanced, together with interest at the legal rate, in Ohio, of six per cent, was either paid to the lender or ordered paid by the Referee. However, the Referee denied the lender (appellant) a recovery for the 1/20 of one per cent provided in the contract and denied also the claim of the lender for recovery of attorneys' fees as provided by contract, as well as certain expenses incurred by the lender after bankruptcy in an effort on its part to obtain strict compliance with its contract in the bankruptcy Court. The lower Court approved the Referee's findings, resulting in this appeal.

Appellant contends that the 1/20 of one per cent charged was not merely for the rent of money but, in addition to interest, covered services and expenses necessarily performed by it in the proper, accurate, and efficient carrying out of the contract between it and the borrower. The Referee and the Court below held that the contract was usurious and that the claim for services rendered was a sham to cover the usury. Wherefore the Referee allowed the recovery of the principal sum advanced, plus interest at the legal rate under the laws of Ohio, which laws, it was conceded, must govern. Appellant still insists that its contract is not usurious; that it has a valid contract providing for the payment of these charges; and that bankruptcy cannot take away from it any legal rights which it has under the contract; and that, notwithstanding the intervention of bankruptcy, it is entitled to its service charges from the date of bankruptcy until the accounts were paid. Its claim is not one for damages for the anticipatory breach of its contract, but it stands upon its rights under the contract which it says bankruptcy cannot take away.

For the purpose of this decision it is unnecessary for us to determine whether or

not the contract was usurious or whether or not the service charges were reasonably commensurate with the services rendered or whether or not the service charges were such as were necessary to the effectual carrying out of the contract and, therefore, for the benefit of both lender and borrower and not merely rental for the use of money. The contract in question was executory in part, if, according to appellant's contention, it was required to *render services* until the accounts were paid. The accounts in question had not been paid and, therefore, the claimed services had not been fully performed when bankruptcy intervened. That part of the contract which was fully executed, to-wit, the lending of the money, is not the subject of this controversy, because the principal sum of money, plus legal interest, was returned, or ordered to be returned, to the appellant. Appellant, therefore, is seeking to compel the performance of that portion of its contract which was executory, namely, to pay it for the services which it had contracted to render and for which it claims it is entitled to be paid, irrespective of the fact that the Trustee in bankruptcy was charged with the duty of collecting the accounts and distributing the proceeds.

■ It is the view of this Court that an adjudication in bankruptcy, be it voluntary or involuntary, is an anticipatory breach of an executory contract for services,[1] remitting the claimant to a claim for damages for the breach, as distinguished from a claim under a continuing and enforceable contract.

■ Section 103, sub. a(9), Title 11 U.S.C.A. (amendment of June 22, 1938), provides that claims for an anticipatory *breach* of contracts, executory in whole or in part, are provable in bankruptcy. Paragraph c of said section provides that the rejection of an executory contract "shall constitute a breach of such contract or lease as of the date of the filing of the petition in bankruptcy". The Trustee has the option of rejecting or disaffirming an executory contract of the bankrupt, and in such an event the other party to the contract may file a claim for damages for the breach. In bankruptcy one may not claim damages for the breach of an executory contract and also claim that the contract is still in effect.

It definitely appears that the Trustee has rejected the executory contract for services insisted upon by the appellant in that he has denied the right of the appellee to perform the services and has also insisted that the contract was usurious. He was upheld by the Referee. The contract for services having been rejected and disaffirmed, the claimant was restricted solely to the right to file a claim for damages for the breach of the contract. We have no claim for damages before us. Even if there were a claim for services rendered in the interval after the filing of an involuntary petition and the appointment of a receiver, or the adjudication, the appellant could only then be heard to claim the value of such services rendered "for the benefit of the estate" in that interval. See Section 103, sub. b, 11 U.S.C.A. This would leave the appellant in no better position because the Referee found: "Their (appellant's) services have been of no benefit to the bankrupt estate but on the contrary their efforts have resulted in considerable expense to the Trustee and by interfering with the Trustee's right to collect the accounts lessened the value of the collateral."

■ It, therefore, appears that there was no error committed below in the disallowance, as a contractual right, of the claim for services after bankruptcy under the contract, in view of the executory nature of the contract for the alleged services and the Trustee's rejection of the services, especially in the absence of a claim for damages for the breach, as distinguished from an assertion of rights under the contract.

■ The contract between the appellant and Banning Mills contained a provision requiring the latter to pay all attorneys' fees incurred in the efforts of the Assignee to collect the amount borrowed and secured by the accounts, but it appears that the Courts of Ohio have held that an agreement for paying attorney's fees and collection fees, if the indebtedness be not paid at maturity, is contrary to public policy and void.[2]

The judgment below is affirmed.

---

[1] Central Trust Co. of Illinois, Trustee, etc., v. Chicago Auditorium Ass'n, 240 U.S. 581, 36 S.Ct. 412, 60 L.Ed. 811, L.R.A. 1917B, 580; Collier on Bankruptcy, 13th Ed., pages 696 and 1410; City Bank Farmers Trust Co. v. Irving Trust Co., 299 U.S. 433, 57 S.Ct. 292, 81 L.Ed. 324.

[2] Miller v. Kyle, 85 Ohio St. 186, 97 N.E. 372; Shelton v. Gill, 11 Ohio 417; State to Use, etc., v. Taylor et al., 10 Ohio 378.